[Civ. No. 3609.  Second Appellate District, Division One.—May 24, 1921.]

## GLOBE OIL MILLS (a Corporation), Appellant, v. VAN CAMP SEA FOOD COMPANY (a Corporation), Respondent.

[1] CONTRACT—SALE OF FISH WASTE—OBLIGATIONS OF SELLER—CONSTRUCTION.—A contract by a copartnership for the sale of fish waste, although it provided that it should remain in force and effect for the period of ten years, imposed no obligation on the firm to continue in business for any specified length of time or to produce any specified quantity of fish waste.

[2] CORPORATIONS—SALE OF PROPERTY—PURCHASE BY ANOTHER CORPORATION—LIABILITY FOR OBLIGATIONS.—In the absence of statutory regulation, the purchase by one corporation of the property of another is not different in law from a similar contract between individuals, and in neither case is the vendee liable for the contractual obligations of the vendor, unless such liability was voluntarily assumed by the former.

[3] CONTRACT — SALE OF FISH WASTE — CESSATION OF BUSINESS — TRANSFER OF ASSETS—LIABILITY OF SUCCESSOR.—Where a copartnership engaged in the business of canning fish entered into a contract for the sale of fish waste for a period of years, and thereafter the partnership ceased operations and the business and interest in the contract was transferred to a corporation of the same name as the partnership, and subsequently such corporation sold its assets to another corporation, the latter was not legally bound to deliver its fish waste under such contract, since the obligation ended upon the cessation of business by the copartnership and its immediate successor.

APPEAL from a judgment of the Superior Court of Los Angeles County.  Paul J. McCormick, Judge.  Affirmed.

The facts are stated in the opinion of the court.

W. G. Van Pelt and Bertin A. Weyl for Appellant.

James E. Kelby and Kemp & Clewett for Respondent.

SHAW, J.—Action to recover damages for the alleged breach of a contract.  Judgment went for defendant, from which plaintiff has appealed.

It appears from the contract, executed on October 17, 1912, a copy of which is set out in the complaint, that the California Tunny Canning Company was engaged in the business of canning fresh fish for market and desirous of disposing of the waste product therefrom, and that John T. Gaffey was engaged in manufacturing fertilizer from such waste product and desired to purchase the same; whereupon the California Tunny Canning Company agreed to sell and Gaffey agreed to buy, for one dollar per ton, all the fish waste, consisting of fish heads, bones, tails, and such other fish waste as was not put into cans by said California Tunny Canning Company, which fish waste, under the terms of the contract, the seller was to place in barges to be furnished by Gaffey who, after the same were loaded, was to remove the same within twelve hours thereafter, and, in case of failure so to do, the said canning company was authorized, at the expense of Gaffey, to employ a tug to tow the barges out to sea and dump such waste material into the water. While, under the terms of the contract, no obligation was imposed upon the seller of such fish waste to continue the business of canning fish, or, if it did, to produce any specified quantity of such product, it was "agreed that this agreement shall be and remain in force and effect for the period of ten years from the date hereof."

It is alleged in the complaint that plaintiff, by mesne assignments and transfers executed prior to the commencement of the action, acquired all the right, title, and interest of Gaffey in and to the contract, together with all rights, claims, demands, and causes of action growing out of the same, or anything done or to be done thereunder; followed by an allegation that defendant, on or about April 30, 1914, became the assignee and successor in interest of the California Tunny Canning Company in and to said contract, and at said time assumed all the covenants and obligations contained in said contract on the part of said California Tunny Canning Company, and ever since said date, up to about September 1, 1917, defendant performed all the covenants and conditions contained in the contract on the part of said California Tunny Canning Company, but since said September 1, 1917, defendant has, without the consent of plaintiff, wholly failed, refused, and neglected to deliver to plaintiff's predecessor in interest, or to plaintiff, any of the

fish waste referred to in the contract, or to perform any of the acts thereby required to be performed on its part as such assignee and in accordance with its obligation so to do, but used the fish waste for its own purposes, business, and profit. Followed by allegations as to the amount of fish waste produced by defendant and which it refused to deliver to plaintiff, who at all times on its part was ready, willing, and able to carry out the terms of the contract.

The chief contention upon which plaintiff bases its claim for a reversal of the judgment is insufficiency of the evidence to justify the finding of the court to the effect that it is not true that on April 30, 1914, or at any other time, or at all, the Van Camp Sea Food Company, defendant herein, became the assignee or successor in interest of said California Tunny Canning Company in or to said contract, and it is not true that it, at said time or at any time, assumed the obligation to perform all or any of the covenants contained therein on the part of said California Tunny Canning Company as one of the makers of the contract, nor is it true that prior to September 1, 1917, defendant performed or carried out all or any of the covenants or conditions therein contained, or received any of the benefits thereof.

The evidence, as disclosed by the record, clearly tends to establish certain facts, among which are: That at the time of the execution of the contract Paul Eachus and W. F. Wood constituted a copartnership, doing business under the name and style of the California Tunny Canning Company, one of the parties to the contract, and that as made it was with them as such copartners; that on January 8, 1914, a corporation, designated the California Tunny Canning Company, was created, with a capital stock of fifty thousand dollars, divided into shares of one hundred dollars each, and, excepting two shares thereof, the stock was equally divided between Eachus and Wood, theretofore constituting the copartnership. Other than a stipulation "that title passed to the California Tunny Canning Company, a corporation, of all the assets of the California Tunny Canning Company, a copartnership, on or about the 8th of January, 1914," there is nothing whatsoever disclosed by the record showing any transfer, by assignment or otherwise, of the interest of the copartnership in and to the contract in question.

On April 22, 1914, Frank Van Camp, Paul Eachus, and F. H. Ford entered into a contract whereby they agreed to form a corporation for the purpose of conducting a fisheries, canning, manufacturing, and mercantile business, to be named the Van Camp Sea Food Company, with a capital of two hundred thousand dollars, divided into two thousand shares of the par value of one hundred dollars each, and wherein it was agreed that Frank Van Camp should receive, for the use of his name, one thousand shares of said stock, and that Paul Eachus, who subsequent to the incorporation of the California Tunny Canning Company had acquired the interest therein of W. F. Wood, should turn over to the Van Camp corporation all of the corporate stock of the California Tunny Canning Company, together with the plant and equipment thereof, including all merchandise, accounts receivable, the lease of the ground belonging to the Southern Pacific Company, now held by the California Tunny Canning Company, and all interest in or leases on machinery and equipment belonging thereto, whether the same stands in the name of the California Tunny Canning Company or that of Paul Eachus, "subject to all indebtedness, contracts or obligations of the said California Tunny Canning Company," for which he should receive five hundred shares of the stock of said Van Camp Sea Food Company; and that Frank Van Camp and F. H. Ford should jointly furnish to said last-named company the sum of fifty thousand dollars in cash, for which there should be issued to them five hundred shares of stock therein. In accordance with this agreement, the Van Camp Sea Food Company, defendant herein, was duly organized, and at a meeting held on April 30, 1914, as shown by the minutes of the proceedings of the board of directors, consisting of Frank Van Camp, Gilbert Van Camp, Paul Eachus, Wilbur F. Wood, and F. H. Ford, the agreement under which said corporation was organized was presented and a statement made by one of the directors that the corporation was formed and organized pursuant thereto. Whereupon the agreement was approved, and the president and secretary ordered to issue and deliver to Frank Van Camp one thousand shares of the stock of the corporation, and to issue and deliver to Paul Eachus five hundred shares upon a transfer of the property to be conveyed by him in accordance with the agreement,

and to Frank Van Camp and F. H. Ford five hundred shares of stock upon the payment therefor of fifty thousand dollars, as provided in said agreement.

There were several assignments of the interest of John T. Gaffey in and to the contract prior to July 16, 1917, at which time, by a naked assignment, it was acquired by the Globe Cotton Seed Oil Mills, which, however, assumed none of the obligations imposed by the contract upon Gaffey, and this last-named company, on November 14, 1917, by naked deed of assignment, sold and transferred the same, together with "all rights thereunder against the Van Camp Sea Food Company," to plaintiff, who likewise assumed none of the obligations imposed by the contract upon Gaffey. It further appears from the evidence that at the time of the organization of defendant corporation it had no notice of the existence of said contract, and that while it did, prior to September 1, 1917, deliver fish waste to plaintiff's purported predecessors in interest in said contract, it at all times denied any obligation so to do and did for most of the period, up to the time that it ceased such deliveries, exact from plaintiff's predecessors in interest payment therefor at the rate of $2.60 per ton for said fish waste. Although in so doing it appears that there existed a controversy between the parties as to their respective rights under the terms of the contract, plaintiff's predecessor in interest therein claiming that it was entitled to the fish waste at the price of one dollar per ton, notwithstanding which fact it, in obedience to the demand of defendant, who refused to recognize the contract, paid $2.60 per ton therefor, as a result of which fact it was, on July 10, 1917, agreed between the parties that the rights of neither should be prejudiced by reason of such payments.

[1] As we construe the contract, it imposed no obligation upon the copartnership of Eachus and Wood, as parties thereto, to continue in business, or, if they did, to produce any specified quantity of fish waste. Hence, they might, without violating the terms thereof, have ceased doing business the day following its execution, or, if they continued therein, reduced the output to a few pounds per day. In effect, it required them, so long as they conducted the business, to sell such fish waste as they produced to Gaffey for one dollar per ton; and while, in case of his de-

fault, an action would lie thereon against him for the agreed price, and, in case he neglected to remove it, the additional cost of towing the fish waste to sea, no such right of action existed against the plaintiff for the reason that, under the naked assignment, it assumed none of the obligations imposed upon Gaffey. The California Tunny Canning Company, copartnership, as it had the right to do, ceased operations; and, assuming that under the stipulation of counsel its interest in the contract was transferred to the corporation of like name, this corporation assumed no obligation to perform the conditions thereof; and assuming further that it was a substituted agency of Eachus and Wood through which to conduct the business, then it had the same right to cease business as did the copartnership. In effect it exercised such right by ceasing operations and selling its assets to defendant, which, as a corporation organized with a capital of four times that of the California Tunny Canning Company, issued to Eachus, who at the time had acquired substantially all interest in said last-named corporation, five hundred shares of its stock in payment therefor, and the conduct of the business and existence of the corporation terminated. Upon these facts counsel for appellant insists that defendant corporation was but a continuance of the California Tunny Canning Company, and, in effect, a consolidation or merger of two corporations, by reason of which facts defendant, under the terms of the contract, was legally bound to deliver to it all the fish waste produced by it during the term specified therein. We cannot assent to this proposition. On the contrary, it clearly appears that a new, separate, and distinct corporation was formed, which, in consideration of the issuance of five hundred shares of its stock, purchased the assets of the California Tunny Canning Company, but did not assume the performance of the contract. **[2]** In the absence of statutory regulation, "the purchase by one corporation of the property of another is not different in law from a similar contract between individuals, . . . In neither case is the vendee liable for the . . . contractual obligations of the vendor, unless such liability was voluntarily assumed by the former." (7 Ruling Case Law, p. 156.) There is neither allegation nor proof of any fraud in the transaction; there was no agreement whatsoever on the part of defendant to assume performance

of the contract; and there is nothing in the circumstances surrounding the transaction tending to show a consolidation of the two corporations.

[3]   Our conclusion is that the contract imposed no obligation upon Eachus and Wood, as individuals constituting the copartnership, to continue in business, and that, by the mere naked transfer thereof, no additional obligation was imposed upon the California Tunny Canning Company, which was free to discontinue the business; and conceding the transfer of assets of the last-named corporation to defendant to have included the contract as part thereof and made "subject to all . . . contracts or obligations of the California Tunny Canning Company," such provision could not be construed as creating an obligation on the part of defendant to deliver all the fish waste produced by it to plaintiff. Moreover, since the obligation imposed upon the California Tunny Canning Company ended with its cessation of business, there was no obligation imposed upon defendant and hence none to which the transfer was subject.

In our opinion, the facts established warranted the court in making the finding upon which the judgment is founded.

The court also made a finding that, as alleged in the answer, the cause of action was barred by a judgment rendered in a former suit between the parties and involving the same matters here litigated. In view, however, of what has been said, no purpose could be served in discussing this alleged error, since, conceding the insufficiency of the evidence to support it, such fact could not affect the conclusion reached.

The judgment is affirmed.

Conrey, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 21, 1921.

Angellotti, C. J., Shaw, J., Lawlor, J., and Shurtleff, J., concurred.

Wilbur, J., Lennon, J., and Sloane, J., did not participate.